IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| HATTIE DICKERSON, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:08-CV-122 (CAR) |
| JAMES B. PEAKE, Secretary, Department of Veterans Affairs Agency, CARL VINSON VA MEDICAL CENTER, et al., | : | |
| Defendants. | : | |

**ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION**

This matter comes before the Court on Plaintiff Dickerson's Motion for Reconsideration [Doc. 72]. Through her motion, Plaintiff requests that the Court reconsider its previous order granting summary judgment in favor of Defendants on Dickerson's claims under the Rehabilitation Act of 1973. Having carefully considered the matter, the Court has determined that Dickerson has not established any ground for reconsidering the prior order. Accordingly, Dickerson's Motion for Reconsideration [Doc. 72] is **DENIED**.

Before addressing the merits of Plaintiff's Motion, a few words about a procedural matter are in order. Local Rule 7.6 sets a five (5) page limit on briefs filed in support of a motion for reconsideration. Once again, Plaintiff has buried the Court under a raft of paperwork – 469 pages worth. Plaintiff's brief in support of her motion is fifty-nine pages long, and she has attached to that 410 pages of self-annotated exhibits. In deference to Plaintiff's pro se status, in an attempt to keep this litigation moving forward, and in light of the fact that Defendants have not challenged the length

1

of Plaintiff's brief, the Court, in its discretion, will consider Plaintiff's grossly overlong brief. If Plaintiff desires to pursue this matter further before the Eleventh Circuit, she would be well advised to adhere to that court's filing requirements.

The Local Rules provide for motions for reconsideration, but they also note that such motions "shall not be filed as a matter of routine practice." M. D Ga. L.R. 7.6. "Motions for reconsideration should be granted only if: (1) there has been an intervening change in controlling law; (2) new evidence has been discovered; or (3) reconsideration is needed to correct clear error or prevent manifest injustice." Ctr. for Biological Diversity v. Hamilton, 385 F. Supp. 2d 1330, 1337 (N.D. Ga. 2005). Plaintiff does not appear to point to any change in intervening law. Instead, her arguments seem to focus on newly discovered evidence and the need to correct clear error or prevent manifest injustice.

Plaintiff has failed to establish that reconsideration of the Court's prior order is justified based on newly discovered evidence. The bulk of the exhibits presented with Plaintiff's motion were before the Court and considered by the Court in the summary judgment order. Plaintiff has also attached medical evaluations that were performed during the pendency of the Defendants' Summary Judgment Motion.

Assuming this constitutes newly discovered evidence, the information provided in those evaluations does not contradict the evidence on which the Court's Order was based. For instance, Plaintiff points out a statement in a "Second Opinion Evaluation" provided by a Dr. St. Clair in February 2011 to the effect that Plaintiff had no problems while working in Nursing Education and that she could perform patient education and teaching in a relatively controlled environment. True enough. Plaintiff has always maintained that she experienced no problems in Nursing Education. As the Court pointed out in its Order, however, Dickerson never identified the Nursing Education

2

office as a reasonable accommodation, and uncontroverted evidence showed that her time there was a temporary detail to an unfunded position. Dr. St. Clair goes on to state that Plaintiff "presents with complaints of being sensitive to unknown chemicals in her everyday environment." Dr. St. Clair then states that Dickerson's "hypersensitivity reactions tend to occur more frequently and to broader classes of chemicals (such as volatile organic compounds). Irritant reactions are likely to occur whenever there is a sufficient exposure." Dr. St. Clair noted that Dickerson suffered from a "diminished ability to work in clinical areas, where exposure to volatile irritants is more probable than not." Dr. St. Clair concluded that Dickerson was "not disabled from all work," but could "reportedly . . . work in areas where the concentration of triggering substances is lower." All of these statements comport with the Court's understanding of the facts in the Summary Judgment Order. Dickerson suffered from a sensitivity to a growing and undefined class of chemicals that triggered reactions that rendered her incapable of performing the essential functions of her job. Doctors agreed that she might work if she could limit her exposure to reaction triggers, but she failed to identify any position in the VA in which she could avoid these triggers as a reasonable accommodation. Although Dickerson suffered no difficulties in the Nursing Education office, she never identified that position as a reasonable accommodation and uncontroverted evidence showed that was an unfunded temporary assignment. Beyond the Nursing Education office, Dickerson never identified a position in which she would not be exposed to the nebulous and growing list of chemicals that caused her reactions.[1]

---

[1] Other evidence produced by Dickerson paints an even more confusing, and less helpful for her case, picture of her medical condition. For instance, another doctor opined that "it is difficult for me to say that the exposure to solvents including the wax strippers, could have caused her anaphylactoid reactions. However, her respiratory difficulty certainly could have been caused by exposure to these products." This note indicates that while her respiratory problems may have been caused by exposure to solvents, her other anaphylactoid reactions

Plaintiff also makes numerous claims that the Court's Order contained clear errors or worked a manifest injustice. In the end, all of them boil down to her disagreement with the Court's understanding of her medical condition and its conclusion that she failed to identify a position in which she could avoid suffering a debilitating allergic reaction while still performing the essential functions of the position. Having reviewed each, the Court is not convinced that it committed clear error or that its Order works a manifest injustice.[2]

For the foregoing reasons, Plaintiff's Motion for Reconsideration [Doc. 72] is **DENIED**.

SO ORDERED this 30th day of June, 2011.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

bcw

---

might have been caused by another unidentified trigger or group of triggers that she would also need to avoid. The doctor opined that Dickerson should be assigned to a job "which would not expose her to strong odors and smells, chemicals, wax strippers, and solvents." As set forth in the Summary Judgment Order, Dickerson only identified positions that arguably avoided floor wax, as opposed to this broader (and perhaps not broad enough given the doctor's earlier statement regarding anaphylactoid reactions) class of triggers.

[2] The Court notes that Plaintiff's motion contains numerous references to the Federal Employees' Compensation Act (FECA), the Collective Bargaining Agreement (CBA) covering her employment, and the Office of Workers' Compensation Program (OWCP). Her motion appears to claim that Defendants' actions violated her rights under FECA and the CBA, and that she was not properly treated by the OWCP at the VA. Such matters are not under consideration here. Plaintiff's Complaint in this case raised claims under the Rehab Act, and those are the claims that have been decided.

4